# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-3604

———————

Competitive Telecommunications          *
Association,                            *
                                        *
            Petitioner,                 *
                                        *
The Competition Policy Institute;    *
MCI Telecommunications Corporation;*
General Communication, Inc.;            *
Telecommunications Resellers            *
Association; America's Carriers         *
Telecommunication Association;          *
Cable & Wireless, Inc.; AT&T Corp.;*
Maryland Public Service Commission;*   On Petitions for Review
Arkansas Public Service Commission;*   of an Order of the
Oregon Public Utility Commission;   *  Federal Communications
North State Telephone Company;          *   Commission
Roseville Telephone Company;            *
Concord Telephone Company; Rock     *
Hill Telephone Company; Public          *
Utilities Commission of the State   *
of Hawaii; Minnesota Public             *
Utilities Commission; The Ad Hoc    *
Coalition of Telecommunications         *
Manufacturing Companies; Pacific    *
Telecom, Inc.; Minnesota                *
Independent Coalition; Worldcom,    *
Inc.; Kentucky Public Service           *
Commission; Kansas Corporation          *
Commission; Public Service              *
Commission of the State of Wyoming;*
Rhode Island Public Utilities           *
Commission; Public Service              *
Commission of Wisconsin; State of   *
Texas; Alabama Public Service           *
Commission; Citizens Telephone          *
Company of Kecksburg; New Mexico    *
State Corporation Commission;           *
Public Service Commission of the    *
State of Montana; Utah Department   *
of Commerce, Division of Public         *

Utilities; Public Service                    *
Commission of Utah; Public Service           *
Commission of the State of South             *
Carolina; Tennessee Regulatory               *
Authority; Aging Forum, doing                *
business as National Silver Haired           *
Congress, Inc.; U.S. Coalition on            *
Aging; College for Living; Council           *
of Silver Haired Legislatures;               *
Missouri Alliance of Area Agencies           *
on Aging; Missouri Association for           *
the Deaf; Missouri Council of the            *
Blind; Presidents' Club for                  *
Telecommunications Justice;                   *
Paraquad, Rural Advocates for                *
Independent Living; Services for             *
Independent Living; Public                   *
Utilities Commission of the State            *
of Colorado; Department of Public            *
Utilities of the Commonwealth of             *
Massachusetts; Oklahoma                      *
Corporation Commission; Public               *
Service Commission of the State of           *
Connecticut Department of Public             *
Utility Control,                             *
                                             *
          Intervenors on Appeal,   *
                                             *
     v.                                      *
                                             *
Federal Communications Commission;   *
United States of America,                    *
                                             *
          Respondents,                       *
Bell Atlantic Corporation;                   *
Bellsouth Corporation; Pacific               *
Telesis Group; SBC Communications,   *
Inc.; US West, Inc.; US Telephone   *
Association; Ameritech Corporation;*
Southern New England Telephone               *
Company; GTE Service Corporation;   *
New York Telephone Company; New              *
England Telephone and Telegraph              *
Company; Nextlink Communications,   *
L.L.C.; National Cable Television   *
Association, Inc.; Sprint Corp.;   *
American Communications Services,   *
Inc.; Association for Local                  *

-2-

Telecommunications Services;          *
Consumer Federation of America;       *
Jones Intercable, Inc.;               *
Telecommunications, Inc.; Teleport  *
Communications Group, Inc.; Allied  *
Associated Partners; Geld             *
Information Systems; U.S. One          *
Communications Services; Frontier   *
Corporation; City of Long Beach,     *
California; City of Manassas,          *
Virginia; Time Warner                 *
Communications Holdings, Inc.;        *
Personal Communications Industry    *
Association; Alltel Telephone          *
Services Corporation; Independent   *
Telephone and Telecommunications    *
Alliance; Excel Telecommunications,*
Inc.; Paging Network, Inc.;           *
Nextwave Telecom, Inc.; Small        *
Cable Business Association;            *
Metrocall, Inc.; Texas Office of     *
Public Utility Counsel,               *
                                      *
          Intervenors on Appeal.    *
                                      *
----------------------                *
                                      *
Honorable John D. Dingell;            *
Honorable W.J. (Billy) Tauzin;        *
Honorable Rick Boucher; Honorable   *
Dennis Hastert,                       *
                                      *
          Amici on Behalf of          *
          Petitioner.                 *

                    _____

          Submitted:  January 17, 1997

             Filed:  June 27, 1997
                    _____

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.
                    _____


BOWMAN, Circuit Judge.

-3-

Competitive Telecommunications Association (CompTel) petitions for review of a portion of a Federal Communications Commission (FCC) order that interprets the Telecommunications Act of 1996, see First Report and Order, Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, CC Docket No. 96-98 (Aug. 8, 1996) [hereinafter First Report and Order]. This is one of a number of cases consolidated and referred to the Eighth Circuit Court of Appeals by order of the Judicial Panel on Multidistrict Litigation. See Iowa Utils. Bd. v. FCC, 109 F.3d 418, 421 (8th Cir.), motion to vacate stay denied, 117 S. Ct. 429 (1996). The Court heard oral argument on CompTel's petition separately, and we now issue a separate decision, as this case deals with discrete issues raised only in CompTel's petition.

CompTel describes itself as "the principal industry association of the nation's competitive telecommunications carriers, with nearly 200 members." Brief of Petitioner (Disclosure of Interests at 1). CompTel has been described more specifically as "a trade association with over 150" members who are long-distance telephone companies, known in telecommunications jargon as interexchange carriers or IXCs. Competitive Telecomms. Ass'n v. FCC, 87 F.3d 522, 524 (D.C. Cir. 1996); see also Brief of Respondent at 3.

I.

CompTel first challenges the FCC's interpretation of the term "interconnection" as used in 47 U.S.C.A. § 251 (c)(2) (West Supp. 1997).[1] Section 251 in general concerns the development of

---

[1]All references in this opinion to sections and subsections of the Telecommunications Act of 1996 in West's United States Code Annotated (U.S.C.A.) are to the 1997 supplement.

competitive telecommunications markets, and the duties and obligations of telecommunications carriers in furtherance of that objective as Congress has described them. Subsection (a) lists the duties imposed on all telecommunications carriers, whether long-distance or local, and subsection (b) details obligations of all local exchange carriers (LECs).[2] Here we are concerned with subsection (c), which sets forth "[a]dditional obligations of incumbent" LECs, that is, those who were providing local phone service in an area on February 8, 1996, the date the Telecommunications Act of 1996 became law. See id. § 251(h)(1). Among the obligations assigned incumbent LECs is "[t]he duty to provide, for the facilities and equipment of any requesting telecommunications carrier, interconnection with the [LEC's] network . . . for the transmission and routing of telephone exchange service and exchange access." Id. § 251(c)(2)(A).

In its First Report and Order, the FCC concluded "that the term 'interconnection' under section 251(c)(2) refers only to the physical linking of two networks for the mutual exchange of traffic." First Report and Order ¶ 176; see also 47 C.F.R. § 51.5 (1996)(defining interconnection as in the First Report and Order and noting that "[t]his term does not include the transport and termination of traffic"). CompTel argues that Congress intended interconnection to be more than mere physical access and that the definition of the term should include transmission and routing services as well.

In reviewing the decision of an administrative agency, we "must reject administrative constructions which are contrary to

---

[2]LECs provide local telephone service or offer local access for long-distance service. See 47 U.S.C.A. § 153(26), (47), (16).

clear congressional intent."  <u>Chevron U.S.A. Inc. v. Natural Resources</u> <u>Defense Council, Inc.</u>, 467 U.S. 837, 843 n.9 (1984).  Here, however, the term interconnection is undefined by the Act, and when "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  <u>Id.</u> at 843.  In applying that standard, the FCC's interpretation of interconnection is entitled to "considerable weight" and this Court's deference.  <u>Id.</u> at 844.

A.

CompTel first asserts that the FCC's definition of interconnection writes certain other language out of the statute.  We disagree.  CompTel contends that Congress's language requiring incumbent LECs to provide interconnection "<u>for</u> the transmission and routing of telephone exchange service and exchange access" means that Congress intended to require the LECs to provide transmission and routing services in addition to interconnection.  According to the argument, the FCC's definition renders the phrase "for the transmission and routing" meaningless.  But considering the section as a whole and in context, it is reasonable to conclude that Congress intended "for the transmission and routing of telephone exchange service and exchange access" only to describe what the interconnection, the physical link, would be used for.[3]  That

---

[3]**Telephone exchange service** is local service, that is, "service within a telephone exchange" or within a system of exchanges within the same area that operates as a single exchange, or a comparable service.  47 U.S.C.A. § 153(47). **Exchange access** is "the offering of access to telephone exchange services or facilities for the purpose of the origination or termination of telephone toll services," that is, "service between stations in different exchange areas for which there is made a separate charge."  <u>Id.</u> § 153(16), (48).  See also the definition of local exchange carrier (LEC) at 47 U.S.C.A.

§ 153(26) ("any person that is engaged in the provision of telephone exchange service or exchange access").

interpretation is further bolstered by the subsection's express provision that the LEC's duty is to provide interconnection **for the facilities and equipment** of the requesting carrier **with the LEC's network**. By its own terms, this reference is to a physical link, between the equipment of the carrier seeking interconnection and the LEC's network.

As a part of its statutory argument, CompTel also argues that the FCC's interpretation of interconnection violates the principle of statutory construction set forth in <u>Sierra Club v. Clark</u>, 755 F.2d 608, 613 (8th Cir. 1985), wherein this Court said, "[S]tatutory definitions of words used elsewhere in the same statute furnish such authoritative evidence of legislative intent and meaning that they are usually given controlling effect." We reject CompTel's argument for several reasons.

First, the language from <u>Sierra Club</u> does not set forth an absolute edict, but only states that such definitions **usually** will control. In any event, CompTel does not even suggest that interconnection is defined anywhere in the Act. CompTel really is contending that, if the FCC's definition is upheld, "the 1996 Act would lose virtually all meaning" because of the way the term interconnection is used elsewhere in the Act. Brief of Petitioner at 13. But the only specific use of the word to which CompTel refers in its brief is that in 47 U.S.C.A. § 252(e), which says, "Any interconnection agreement adopted by negotiation or arbitration shall be submitted for approval to the State commission." According to CompTel's argument, Congress certainly did not intend this authority for review to be "limited to agreements for the mere physical interconnection of networks."

Brief of Petitioner at 12.  We are inclined to agree, but the term at issue is "interconnection agreement," not just interconnection, and it is a reference back to agreements discussed earlier in § 252.  Even a cursory reading of § 252 makes it clear that interconnection agreement as used in § 252(e) is the Act's shorthand for agreements on providing and establishing rates for "interconnection, services, or network elements."  E.g., 47 U.S.C.A. § 252(a)(1), (c)(2) (emphasis added).

The FCC's interpretation of interconnection as only a physical link for mutual exchange of traffic between LECs does not violate the Act.

B.

CompTel also argues that the FCC's interpretation will subvert the Act's goal of assuring that rates for telecommunications services are cost-based.  See 47 U.S.C.A. § 252(d)(1) (requiring that "the just and reasonable rate for the interconnection of facilities and equipment" under § 251(c)(2) and the "just and reasonable rate for [unbundled] network elements" under § 251(c)(3) be cost-based and nondiscriminatory, and "may include a reasonable profit").  But, assuming without deciding that the FCC's interpretation of interconnection would have the effect CompTel predicts, it is clear from the Act that Congress did not intend all access charges to move to cost-based pricing, at least not immediately.  The Act plainly preserves certain rate regimes already in place.

Under § 251(g), an LEC

> shall provide exchange access, information access, and exchange services for such access to [IXCs] and

-8-

information service providers in accordance with the same equal access and nondiscriminatory interconnection restrictions and obligations (<u>including receipt of compensation</u>) that apply to such carrier on the date immediately preceding February 8, 1996 [date of enactment] under any court order, consent decree, or <u>regulation, order, or policy of the [FCC]</u>, until such restrictions and obligations are explicitly superseded by regulations prescribed by the [FCC] after February 8, 1996.

<u>Id.</u> § 251(g)(emphasis added). In other words, the LECs will continue to provide exchange access to IXCs for long-distance service, and continue to receive payment, under the pre-Act regulations and rates. This section leaves the door open for the promulgation of new rates at some future date, but any possible new exchange access rates for interstate calls will not carry the same deadline or the same cost-based restrictions as will those for interconnection and unbundled network elements specifically mentioned in § 252(d)(1).

We conclude that the FCC's interpretation of interconnection does not thwart the statutory scheme of the Act.

C.

CompTel also challenges the FCC's interpretation of interconnection as having a discriminatory impact, by permitting LECs to charge different rates for the same service based on whether the carrier who is seeking interconnection and other network services is a long-distance service provider or a local service provider. But the two kinds of carriers are not, in fact, seeking the same services. The IXC is seeking to use the incumbent LEC's network to route long-distance calls and the newcomer LEC seeks use of the incumbent LEC's network in order to offer a competing local service. Obviously the services sought, while they

might be technologically identical (a question beyond our expertise), are distinct.  And if the IXC wants access in order to offer local service (in other words, wants to become a LEC), then there is no rate differential.  In these circumstances, we do not think the FCC's interpretation of interconnection has a discriminatory impact.

D.


In sum, we conclude that CompTel has failed to demonstrate that the FCC's interpretation of interconnection as a physical link, and only a physical link, is "not one that Congress would have sanctioned."  Chevron U.S.A., 467 U.S. at 845 (quoting United States v. Shimer, 367 U.S. 374, 383 (1961)).  We hold that limiting interconnection for the purposes of § 251(c)(2) to physical linkage "is based on a permissible construction of the statute."  Id. at 843.

II.

CompTel also challenges an interim decision in the FCC's First Report and Order regarding pricing, arguing that the FCC's position is a violation of the Act and arbitrary and capricious.  Under the Act, as noted supra in Part IB of this opinion, the rates that incumbent LECs charge for § 251(c)(2) and (3) services (interconnection and unbundled network elements) must be cost-based, nondiscriminatory, and "may include a reasonable profit."  47 U.S.C.A. § 252(d)(1).  Notwithstanding this provision, the FCC has established "a temporary transitional mechanism to help complete all of the steps toward the pro-competitive goal of the 1996 Act."  First Report and Order ¶ 720.  That is, incumbent LECs for the time being may recover from interconnecting carriers the carrier common line charge (CCLC) and seventy-five percent of the

transport interconnection charge (TIC) "for all _interstate_ minutes traversing the incumbent LECs' local switches for which the interconnecting carriers pay unbundled local switching element charges." Id. (emphasis added). Neither of these charges is based on the LECs' actual cost.

We will "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C) (1994). It is significant to our review for unlawfulness that the CCLC and TIC presently being assessed may be collected no later than June 30, 1997. See First Report and Order ¶ 720. Although temporary agency rules are subject to judicial review notwithstanding their transitory nature, "substantial deference by courts is accorded to an agency when the issue concerns interim relief." MCI Telecomms. Corp. v. FCC, 750 F.2d 135, 140 (D.C. Cir. 1984).

The FCC acknowledges the cost-based issue raised by assessing the charges but argues that two deadlines in the Act, which are nine months apart, have created a dilemma for the agency, and that the interim charges are the best way to resolve it. According to the FCC, congressional intent on another matter of great importance in the Telecommunications Act of 1996 justifies this temporary diversion from the Act's cost-based mandate. We agree.

Congress directed the FCC to "complete all actions necessary to establish regulations to implement the requirements" of § 251 by August 8, 1996--hence, the First Report and Order released that date. 47 U.S.C.A. § 251(d)(1). The conflicting deadline concerns another major purpose of the Act, that is, the reform of the universal service system. The goal of what is known in the

-11-

telecommunications industry as universal service is to ensure that quality service and access are available to all consumers, "including low-income consumers and those in rural, insular, and high cost areas . . . at rates that are reasonably comparable to rates charged for similar services in urban areas." Id. § 254(b)(3). To date, the subsidies necessary to achieve this goal have been derived, at least in part, from access charges that are not cost-based, so that long-distance rates have been subsidizing local rates. See First Report and Order ¶ 718; Allnet Communication Serv. v. National Exch. Carrier Ass'n, 965 F.2d 1118, 1119 (D.C. Cir. 1992). In keeping with the Act's cost-based objectives, support for universal service will soon be "explicit," 47 U.S.C.A. § 254(e), and after the system is reformed "[a]ll providers of telecommunications services should make an equitable and nondiscriminatory contribution to the preservation and advancement of universal service," id. § 254(b)(4). Congress's deadline for the adoption of universal service rules under the Act was May 8, 1997. See id. § 254(a)(2).[4]

CompTel first argues that the access charges are contrary to the statute. Indeed, as noted above, the Act requires that rates for certain access be cost-based, and at first blush the interim CCLC and TIC assessments appear to be reversible. But the same Act requires the reform of universal service subsidies and not, significantly, abolishment of universal service, even temporarily. Clearly Congress did not intend that universal service should be adversely affected by the institution of cost-based rates. But the

---

[4]We hereby take judicial notice of the Report and Order, Federal-State Joint Board on Universal Service, CC Docket No. 96-45 (May 8, 1997). The effective date of the rules, published along with a summary of the Report and Order at 62 Fed. Reg. 32,862 (1997), is July 17, 1997, except for Subpart E of Part 54 (Universal Service Support for Low Income Services), which has an effective date of January 1, 1998.

nine-month disparity between the deadline for implementation of cost-based service and the deadline for reform of universal service raises the threat of serious disruption in universal service for those nine months if cost-based service is required before universal service is funded by competitively neutral means.  See First Report and Order ¶¶ 719, 720.  We share the FCC's concern "that implementation of the requirements of section 251 now, without taking into account the effects of the new rules on . . . existing access charge and universal service regimes, may have significant, immediate, adverse effects that were neither intended nor foreseen by Congress."  Id. ¶ 716.

If the FCC, upon meeting the August 8, 1996, deadline for issuing the regulations required of it by subsection 251(d)(1), had not instituted an interim access charge of some sort in order to subsidize universal service for the nine months before universal service reforms are complete, we think it apparent that universal service soon would be nothing more than a memory.  The FCC action is logical and carefully explained in the First Report and Order.  We do not think it contrary to the Act to institute access charges with a fixed expiration date, even though such charges on their face appear to violate the statute, in order to effectuate another part of the Act.  Moreover, as discussed above, incumbent LECs may collect the charges no later than June 30, 1997, and the new universal service rules are scheduled to go into effect July 17, 1997 (except as noted). Given the brief life of the interim charges, and the deference that interim rules command, we think the FCC's order on this issue should stand.

Further, while the FCC's approach may not be the best way to maintain universal service on a transitional basis, and perhaps more research and study by the FCC would have resulted in a better solution for temporary funding of universal service, that is not

for us to say.  Because of the temporary status of the CCLC and TIC assessments, we review the agency decision "with the understanding that the agency may reasonably limit its commitment of resources to refining a rule with a short life expectancy."  <u>Competitive Telecomms. Ass'n v. FCC</u>, 87 F.3d at 531 (reviewing "interim" FCC rule that already had been in place for years).  This interim action by the FCC is not arbitrary and capricious, and therefore should not be set aside by this Court.[5]

III.

For the reasons discussed above, CompTel's petition for review is denied, except to the extent discussed <u>supra</u> note 5.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

---

[5]While we uphold the FCC's decision to allow incumbent LECs to collect, on an interim basis, access charges for <u>interstate</u> calls, we vacate the Commission's attempt to regulate the temporary recovery of access charges for <u>intrastate</u> calls contained in paragraphs 729 through 732 of the First Report and Order and C.F.R. § 51.515(c) (1996) as being beyond the scope of the Commission's jurisdiction.  <u>See</u> 47 U.S.C. § 152(b) (1994). While we recognize the FCC is merely "allowing" the state commissions to continue to allow the LECs to collect access charges on intrastate calls, we believe that such an assertion of regulatory power is beyond the scope of the FCC's jurisdiction.