RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0151P (6th Cir.)
File Name: 03a0151p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHIGAN BELL TELEPHONE
COMPANY, d/b/a AMERITECH
MICHIGAN, INC.,
      *Plaintiff-Appellant,*

    *v.*

MFS INTELENET OF
MICHIGAN, INC.; TCG
DETROIT; BROOKS FIBER
COMMUNICATIONS OF
MICHIGAN, INC.; MCI
TELECOMMUNICATIONS
CORPORATION; MCIMETRO
ACCESS TRANSMISSION
SERVICES, INC.; AT&T
COMMUNICATIONS OF
MICHIGAN, INC.; BRE
COMMUNICATIONS, L.L.C.;
and JOHN G. STRAND, JOHN
C. SHEA, and DAVID A.
SVANDA, Commissioners of
the Michigan Public Service
Commission (in their official
capacities and not as
individuals),
      *Defendants-Appellees.*

No. 99-1996

---

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 98-00018—Richard A. Enslen, District Judge.

Argued: November 30, 2000

Decided and Filed: May 20, 2003

Before: DAUGHTREY and MOORE, Circuit Judges;
CARR, District Judge.[*]

---

### COUNSEL

**ARGUED:** Theodore A. Livingston, MAYER, BROWN, ROWE & MAW, Chicago, Illinois, for Appellant. Darryl M. Bradford, JENNER & BLOCK, Chicago, Illinois, Michael A. Nickerson, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Theodore A. Livingston, Robert M. Dow, Jr., John E. Muench, Demetrios G. Metropoulos, MAYER, BROWN, ROWE & MAW, Chicago, Illinois, Jeffery V. Stuckey, John M. Dempsey, DICKINSON, WRIGHT, Lansing, Michigan, Michael A. Holmes, Detroit, Michigan, for Appellant. Darryl M. Bradford, John R. Harrington, JENNER & BLOCK, Chicago, Illinois, Michael A. Nickerson, David A. Voges, Henry J. Boynton, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, Arthur J. LeVasseur, FISCHER, FRANKLIN & FORD, Detroit, Michigan, for Appellees.

---

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

———————

**OPINION**

———————

MARTHA CRAIG DAUGHTREY, Circuit Judge. The plaintiff, Michigan Bell Telephone Company, doing business as Ameritech Michigan, Inc., filed a federal lawsuit pursuant to the Telecommunications Act of 1996, 47 U.S.C. §§ 151-615b, seeking a declaratory judgment and injunctive relief against several competing local telecommunications carriers and the Michigan Public Service Commission. The state commission had earlier rendered an order declaring that Ameritech owed the competing carriers reciprocal compensation for calls to internet service providers that originated at Ameritech and terminated with the competing carriers. After first denying the commission's motion to dismiss the case on jurisdictional grounds, the district court granted summary judgment to the defendants. Finding no error in that final determination, we now affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

#### I. *Telecommunications Act Framework*

The Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, 47 U.S.C. §§ 151-615b, endeavors to inject competition into the market for local telephone service. *See AT&T Corp. v. Ia. Utils. Bd.*, 525 U.S. 366, 371 (1999). In order to do so, the Act requires all telecommunications carriers to interconnect their networks so that customers of different carriers can call one another. *See* 47 U.S.C. § 251(a)(1). Incumbent local exchange carriers (or rather, owners of a local telephone network) must provide network access to competing local exchange carriers, *see* 47 U.S.C. § 251(c)(2), and all local exchange carriers must "establish reciprocal compensation arrangements for the transport and termination of telecommunications." 47 U.S.C. § 251(b)(5). Thus, for example, when a customer of Carrier A calls a customer of Carrier B, Carrier A must pay Carrier B for

completing the call, a cost usually paid on a per-minute basis. Although § 251(b)(5) purports to extend reciprocal compensation to all "telecommunications," the Federal Communications Commission, the executive agency charged with the duty of implementing the Act, has construed the reciprocal compensation requirement to apply only to local telecommunications traffic. *See* 47 C.F.R. § 51.701(a) ("The provisions of this subpart apply to reciprocal compensation for transport and termination of telecommunications traffic between [local exchange carriers] and other telecommunications carriers.").

Section 252 of the Act describes the procedure local exchange carriers must utilize in negotiating the reciprocal compensation arrangements and interconnection agreements by which they will compensate each other for the use of another network. First, the carriers must attempt to reach an agreement through negotiation. At any time in the discussions, however, a party may ask the appropriate state regulatory commission to participate as a mediator. *See* 47 U.S.C. §§ 252(a)(1) and (2). If no agreement can be reached voluntarily, the Act provides for compulsory arbitration by the state commission. *See* 47 U.S.C. § 252(b). Once an agreement has been executed, it must then be submitted to the state commission for approval. *See* 47 U.S.C. § 252(e). The state commission possesses the authority to reject agreements under limited circumstances, *see* 47 U.S.C. § 252(e)(2), and if a state commission fails to carry out its responsibilities, the Federal Communications Commission will preempt the state commission's jurisdiction and act in its stead. *See* 47 U.S.C. § 252(e)(5). A party aggrieved by a "determination" of a state commission under § 252 may bring an action in federal district court. *See* 47 U.S.C. § 252(e)(6). State courts, however, do not have jurisdiction to review decisions of state commissions "approving or rejecting an agreement" under § 252. *See* 47 U.S.C. § 252(e)(4).

## II. History of Present Dispute

The plaintiff, an incumbent local exchange carrier, entered into a number of interconnection agreements with defendants MFS Intelenet of Michigan, Inc.; Brooks Fiber Communications of Michigan, Inc.; MCI Telecommunications Corporation and MCIMetro Access Transmission Services, Inc.; AT&T Communications of Michigan, Inc.; TCG Detroit; and BRE Communications, L.L.C. Those agreements included provisions requiring the parties to pay reciprocal compensation to each other. For over a year under the agreements, the parties did in fact pay reciprocal compensation for calls made to internet service providers. On July 3, 1997, however, Ameritech notified the competing carriers that it would no longer pay reciprocal compensation for local calls placed by its customers to internet service providers who were clients of the competing carriers because such calls were ultimately interstate in nature and thus not subject to the reciprocal compensation provisions of the Act.

The competing carriers either filed complaints with the Michigan Public Service Commission or intervened in such actions challenging Ameritech's decision to cease payment. The complaints were consolidated, and after reviewing the parties' interconnection agreements, the commissioners of the state regulatory body issued an order instructing Ameritech to release back compensation to the competing local exchange carriers and to resume payment of reciprocal compensation. Ameritech filed an action with the federal district court seeking a declaratory judgment and injunction against enforcement of that determination, naming as defendants the competing carriers and the commissioners of the Michigan Public Service Commission. After rendering an order that denied a motion to dismiss filed by the commissioners for lack of jurisdiction and failure to state a claim, *see Mich. Bell Tel. Co. v. MFS Intelenet of Mich., Inc.*, 16 F. Supp. 2d 817 (W.D. Mich. 1998), the district court granted summary

judgment to the defendants on Ameritech's claims, leading to this appeal by the plaintiff.

We heard oral argument in this matter more than two years ago, but subsequently issued an order holding the case in abeyance pending a decision by the United States Supreme Court in another dispute that involved a jurisdictional disagreement identical to the one presented to us here. The Court released that opinion on May 20, 2002, *see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 122 S.Ct. 1753 (2002), and the parties have provided us with supplemental authorities to aid us in our decision-making. Finally, on December 4, 2002, the corporate defendants filed with this court a notice of a ruling by the United States Bankruptcy Court for the Southern District of New York that modified the automatic stay in a proceeding involving WorldCom, Inc., the successor to the corporate defendants, and recognized that there is now no impediment to our resolution of this appeal.

## DISCUSSION

### I. Federal Court Jurisdiction

Initially, parties to this appeal disputed the jurisdiction of the federal courts to entertain the case under the Act. Specifically, the individual members of the Michigan Public Service Commission contended that the Act itself granted federal courts jurisdiction only to *review* commission decisions approving or rejecting interconnection agreements, not to *interpret or enforce* them. Furthermore, the commissioners asserted that they were immune from suit pursuant to Eleventh Amendment sovereign immunity principles.

Through its decision in *Verizon Maryland*, the Supreme Court has now definitively answered these jurisdictional challenges for us. In that analogous appeal, the Court concluded, as had this circuit previously in *GTE North, Inc. v. Strand*, 209 F.3d 909 (6th Cir. 2000), that the general

federal-question jurisdiction of 28 U.S.C. § 1331 conferred upon district courts the power to resolve these disputes. As stated by the Court:

> [The plaintiff's] claim thus falls within 28 U.S.C. § 1331's general grant of jurisdiction, and . . . nothing in [the Act] purports to strip this jurisdiction. [The Act] provides for federal review of an agreement when a state commission "makes a determination under [47 U.S.C. § 252]." If this does not include . . . the interpretation or enforcement of an interconnection agreement, then [the Act] merely makes *some other* actions by state commissions reviewable in federal court. This is not enough to eliminate jurisdiction under § 1331.

*Verizon Md.*, 535 U.S. at ___, 122 S.Ct. at 1759.

Moreover, the *Verizon Maryland* opinion explains that a request for declaratory and injunctive relief against the commissioners of a state regulatory body is not barred by the Eleventh Amendment's ban on suits against a sovereign state. Instead, the well-established doctrine of *Ex parte Young*, 209 U.S. 123 (1908), allows the plaintiff to "proceed against the individual commissioners in their official capacities . . . ." *Verizon Md.*, 535 U.S. at ___, 122 S.Ct. at 1760. *See also Mich. Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 867 (6th Cir. 2000). Bound by these directives from the Supreme Court, we now proceed to a discussion of the substantive dispute before us.

## II.  Standards of Review

We review *de novo* a district court order granting summary judgment. *See Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001), *cert. denied*, 123 S.Ct. 73 (2002). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the

basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The district court's summary judgment decision in this case was itself the result of a review of a ruling of a state administrative body. In addressing the substantive issue in this case – whether local exchange carriers are obligated to tender reciprocal compensation for their customer's telephone calls to internet service providers who are subscribers of competing carriers -- our *de novo* review, therefore, requires us also to employ the proper standard or standards for review of the underlying *state* administrative ruling. Because arriving at a decision in these disputes thus involves an understanding of the interplay between federal and state law, it is not surprising that a majority of our sister courts of appeal that have addressed similar claims have utilized a two-tiered review procedure. *See, e.g., Southwestern Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d 475 (5th Cir. 2000); *GTE South, Inc. v. Morrison*, 199 F.3d 733 (4th Cir. 1999); *U.S. West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112 (9th Cir. 1999). *But see Ill. Bell Tel. Co. v. Worldcom Techs., Inc.*, 179 F.3d 566 (7th Cir. 1999).

Those courts have held that the federal judiciary should first review *de novo* whether a state public service commission's orders comply with the requirements of the Telecommunications Act. If no illegality is uncovered during such a review, the question of whether the state commission correctly interpreted the challenged interconnection agreement must then be analyzed, but under the more deferential arbitrary-and-capricious standard of review usually accorded state administrative bodies' assessments of state law principles. *See Southwestern Bell Tel. Co.*, 208 F.3d at 482; *GTE South, Inc.*, 199 F.3d at 745; *U.S. West Communications*,

193 F.3d at 1117. Given the inherent logic of a federal appellate court reviewing *de novo* compliance with federal law and allowing state agencies wider deference in state law determinations, we also adopt the bifurcated standard employed by the majority of other circuits.

### III.  Analysis

#### A.  Compliance with the Requirements of Federal Law

Prior to the district court judgment in this case, the Federal Communications Commission rendered an administrative ruling pertinent to reciprocal compensation for internet service provider (ISP)-bound calls entitled *In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996; Intercarrier Compensation for ISP-Bound Traffic*, 14 F.C.C.R. 3,689 (1999) (1999 Ruling). In that ruling, the Commission concluded that, while ISP-bound traffic is "jurisdictionally-mixed," it is largely interstate, rather than intrastate, or local, in nature. *Id*. at ¶¶ 18, 19. The agency continued, however, to address state regulatory commission findings regarding the application of reciprocal compensation provisions of interconnection agreements to ISP-bound traffic. In doing so, the Commission noted that it had itself treated ISP-bound traffic as though it were local since 1983. *See id*. ¶ 23. Consequently, because no official Commission rule had been promulgated providing that ISP-bound traffic is interstate, and because even the Act itself does not address this issue, the federal agency found "no reason to interfere with state commission findings as to whether reciprocal compensation provisions of interconnection agreements apply to ISP-bound traffic." *Id*. at ¶ 21.

Furthermore, the Commission recognized that individual parties "may reasonably have agreed, for the purposes of determining whether reciprocal compensation should apply to ISP-bound traffic, that such traffic should be treated in the same manner as local traffic." *Id*. at ¶ 24. Likewise, "[e]ven

where parties to interconnection agreements do not voluntarily agree on an inter-carrier compensation mechanism for ISP-bound traffic, state commissions nonetheless may determine . . . that reciprocal compensation should be paid for traffic." *Id*. at ¶ 25. The Commission thus declared that nothing in its ruling "necessarily should be construed to question any determination a state commission has made, or may make in the future, that parties have agreed to treat ISP-bound traffic as local traffic under existing interconnection agreements." *Id*. at ¶ 24. In conclusion, the Commission proclaimed:

> A state commission's decision to impose reciprocal compensation obligations in an arbitration proceeding -- or a subsequent state commission decision that those obligations encompass ISP-bound traffic -- does not conflict with any Commission rule regarding ISP-bound traffic. By the same token, in the absence of governing federal law, state commissions also are free *not to require* the payment of reciprocal compensation for this traffic and to adopt another compensation mechanism.

*Id*. at ¶ 26 (citations omitted) (emphasis added).

Subsequently, the Court of Appeals for the District of Columbia vacated this ISP ruling and remanded the matter to the Federal Communications Commission with instructions to provide a more satisfactory explanation of why local exchange carriers that terminate calls to ISPs are not properly seen as terminating *local* telecommunications traffic. *See Bell Atl. Tel. Cos. v. FCC*, 206 F.3d 1 (D.C. Cir. 2000). The following year, in *In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996; Intercarrier Compensation for ISP-Bound Traffic*, 16 F.C.C.R. 9,151 (2001) (ISP Remand Order), the Commission re-issued its ruling, this time specifying that 47 U.S.C. § 251(b)(5) generally obligates all local exchange carriers "to establish reciprocal compensation arrangements for the transport and termination of telecommunications." According

to the ruling, this statutory provision, on its face, requires local exchange carriers to provide for such reciprocal payments "for transport and termination of *all* telecommunications traffic," "[u]nless subject to further limitation." *ISP Remand Order* at ¶ 32 (emphasis in original).

The Commission then, however, concluded that just such an exception was "carved out" from the general requirement for ISP-bound traffic by 47 U.S.C. § 251(g), which provides, in relevant part:

On or after February 8, 1996, each local exchange carrier, to the extent it provides wireline services, shall provide exchange access, *information access*, and exchange services for such access to interexchange carriers, and information service providers in accordance with the same equal access and nondiscriminatory interconnection restrictions and obligations (including receipt of compensation) that apply to such carrier on the date immediately preceding February 8, 1996 under any court order, consent decree, or regulation, order, or policy of the Commission, until such restrictions and obligations are explicitly superseded by regulations prescribed by the Commission after February 8, 1996.

(Emphasis added.) Accordingly, the Commission affirmed its 1999 ruling "that ISP-bound traffic is not subject to the reciprocal compensation obligations of section 251(b)(5)." *ISP Remand Order* at ¶ 3. Nevertheless, the agency did provide that its ruling in the remand order was to have prospective effect only. As stated by the Commission:

The interim compensation regime we establish here applies as carriers re-negotiate expired or expiring interconnection agreements. *It does not alter existing contractual obligations*, except to the extent that parties are entitled to invoke contractual change-of-law provisions. *This Order does not preempt any state commission decision regarding compensation for ISP-*

*bound traffic for the period prior to the effective date of the interim regime we adopt here.*

*Id.* at ¶ 82 (emphasis added). Thus, the *ISP Remand Order* result should have no bearing on the present dispute that predates that ruling.

Furthermore, the ruling itself was severely undercut by the Court of Appeals for the D.C. Circuit in *WorldCom, Inc. v. Federal Communications Commission*, 288 F.3d 429 (D.C. Cir. 2002). In that decision, the court once again remanded the matter to the Federal Communications Commission for further consideration. In doing so, the court noted that the sole basis for the agency's decision was the belief that the result was mandated by the provisions of 47 U.S.C. § 251(g); nevertheless, the panel concluded that "nothing in § 251(g) seems to invite the Commission's reading." *Id.* at 433. Consequently, "§ 251(g) does not provide a basis for the Commission's action." *Id.* at 434.

Regardless of the vitality or correctness of the Federal Communications Commission's ultimate determination regarding reciprocal compensation for ISP-bound telecommunications traffic, the agency's proclamations concerning the authority of state administrative bodies in this area of the law remain instructive. The federal agency has noted that it itself has yet to promulgate an official rule governing such reciprocal compensation. *See 1999 Ruling* at ¶ 9. Due to this circumstance, as well as the realization that the Act also does not address the issue, the Federal Communications Commission has declared that it finds "no reason to interfere with state commission findings as to whether reciprocal compensation provisions of interconnection agreements apply to ISP-bound traffic, pending adoption of a rule establishing an appropriate interstate compensation mechanism." *Id.* at ¶ 21. Furthermore, "[a]lthough reciprocal compensation is mandated under section 251(b)(5) only for the transport and termination of local traffic, neither the statute nor our rules

prohibit a state commission from concluding in an arbitration that reciprocal compensation is appropriate in certain instances." *Id.* at ¶ 26. In any event, the present telecommunications landscape makes clear that existing interconnection agreements "requiring payment of reciprocal compensation for calls made to ISPs do not conflict with §§ 251 and 252 of the Act or with the FCC's regulations or rulings." *Southwestern Bell Tel. Co.*, 208 F.3d at 483.

### B. State Commission Interpretation of Contractual Agreement

Finally, we must determine whether the Michigan Public Service Commission's interpretation of the contractual language in the agreements between the parties to this litigation is an arbitrary or capricious reading of the terms expressed. Although the state administrative body analyzed the agreements and found that they did indeed mandate reciprocal compensation for ISP-bound traffic, the plaintiff now insists that such a conclusion was reached only by consideration of allegedly improper extrinsic evidence. We disagree. Although the state public service commission did discuss extrinsic evidence in its ruling, the commissioners also stated unequivocally that "the terms of the agreements themselves resolve the question and require Ameritech Michigan to pay reciprocal compensation for the disputed calls." This conclusion was neither arbitrary nor capricious.

The Michigan Public Service Commission began its analysis of the parties' agreements by noting that the disputed calls "terminate within the local calling area" and "are made from one local number to another in the local calling area." Recognizing that the "agreements do not distinguish between calls based on the nature of the customer receiving the call," the agency decided that ISP-bound traffic should, therefore, be considered local telecommunications traffic.

Furthermore, the state commission determined that "calls placed to an ISP at a local number are not exchange access

traffic because they do not relate to the origination or termination of toll service." "Exchange access traffic" refers to calls between long-distance companies and local exchange carriers and contemplates the collection by the long-distance companies of long-distance fees from their customers for payment of access charges to local exchange carriers to compensate them for originating and terminating long-distance calls. By stating that calls placed to an ISP at a local number are not "exchange access traffic," the Michigan Public Service Commission recognized that such calls do not incur long-distance rates and bear indicia of local telecommunications. Moreover, because the agreements between the plaintiff and the defendants explicitly provide that reciprocal compensation is generally *not* paid for "exchange access service," and because the disputed calls "are not among the listed . . . exchange access services that are exempt from reciprocal compensation," the commission concluded that, "on their face, the interconnection agreements" require Ameritech to pay reciprocal compensation for those calls. The plaintiff might well disagree with this analysis and conclusion by the Michigan Public Service Commission. To do so is Ameritech's privilege. That disagreement, however, does not transform the reasoned administrative decision into one that can be deemed arbitrary or capricious.

### CONCLUSION

The ruling of the Michigan Public Service Commission requiring Ameritech to provide reciprocal compensation to the defendants does not violate either the letter or the spirit of the Telecommunications Act of 1996. Additionally, that state administrative ruling, interpreting the written agreements between the parties is supported by the explicit language of the agreements and is neither arbitrary nor capricious. Consequently, we AFFIRM the ruling of the district court granting summary judgment in this matter to the defendants.