# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1976

INDIANA BELL TELEPHONE COMPANY, INC.,

*Plaintiff-Appellee*,

v.

INDIANA UTILITY REGULATORY COMMISSION,
WILLIAM D. MCCARTY, DAVID E. ZIEGNER, in their
capacity as Commissioners of the Indiana Utility
Regulatory Commission and not as individuals,

*Defendants-Appellants*,

and

AT&T COMMUNICATIONS, INC. and WORLDCOM, INC.,

*Intervening Defendants-Appellants*,

and

INDIANA OFFICE OF UTILITY CONSUMER COUNSELOR,

*Intervening Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 02 C 1772—**Larry J. McKinney**, *Chief Judge.*

———————

ARGUED OCTOBER 23, 2003—DECIDED FEBRUARY 26, 2004

———————

Before MANION, KANNE, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*.   Through the Telecommunications Act of 1996, Congress has had notable success in meeting its goal of fostering competition in the telecommunications industry. But that success has not come without furrowing more than a few brows as lawyers and judges puzzle over the Act's unusual—and unequal—blending of federal and state authority. So it is not surprising to have before us again a preemption issue, this time revolving around the application of a local telephone service provider to enter the long-distance market. The issue is whether, during the long-distance application process, a state regulatory commission has the power to enter an order designed to ensure the applicant will continue to meet its obligations in the local service market.

In the Act, Congress entered what was primarily a state system of regulation of local telephone service and created a comprehensive federal scheme of telecommunications regulation administered by the Federal Communications Commission (FCC). While the state utility commissions were given a role in carrying out the Act, Congress "unquestionably" took "regulation of local telecommunications competition away from the State" on all "matters addressed by the 1996 Act"; it required that the participation of the state commissions in the new federal regime be guided by federal-agency regulations. *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 378 n.6 (1999). And we recently learned for certain that federal courts can review what the state regulatory agencies do. *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635 (2002). It is not surprising that questions regarding the degree to which the Act preempts state regulation have inevitably grown out of such a scheme.

The issue before us arises as a result of the request of Indiana Bell Telephone Company, Inc. (now SBC Indiana)

to be allowed to enter the long-distance market. SBC is what is known as an "incumbent local exchange carrier," as defined in 47 U.S.C. § 251(h); it is also a "Bell operating company," (BOC) as defined in 47 U.S.C. § 153(4) and used in section 271 of the Act, 47 U.S.C. § 271. It is one of the Baby Bells—the descendants of the old monopolist American Telephone & Telegraph Company (AT&T). The defendant is a state agency—the Indiana Utility Regulatory Commission (IURC). The intervener defendants are other competing "local exchange carriers," as defined in 47 U.S.C. § 153(44), including AT&T. As we have previously pointed out, "[o]ne of history's ironies is that AT&T itself, reduced to a long-distance carrier . . . has become one of the principal new entrants into local phone service." *AT&T Communications of IL v. Illinois Bell Tel. Co.*, 349 F.3d 402, 404 (7th Cir. 2003). At the same time, the Baby Bells—incumbent local exchange carriers, or Bell operating companies—are attempting to enter the long-distance market.

The Act sets out procedures by which companies enter both the local and long-distance markets. Sections 251 and 252 set out procedures to facilitate entry into local service markets. Section 271 sets forth the process a Bell operating company must go through in applying to the FCC for authority to provide long-distance service.

The Baby Bells have telephone lines and other infrastructure in place. In order to facilitate the entry of competing carriers into the market for local service, the Act requires that incumbent carriers provide "interconnection" and other wholesale services to the competing carriers on a nondiscriminatory basis. Sections 251 and 252 of the Act lay out a process for reaching "interconnection agreements" by which competing carriers can gain interconnection with the incumbent carrier's networks, facilities, and services. The state commissions have a role in helping to negotiate and arbitrate interconnection agreements if

private negotiations fail to produce a complete agreement within a specific period of time. Section 252(a),(b). Before any interconnection agreement may be implemented, the state commission must approve it. Section 252(e)(1).

Going in the other direction, section 271 sets out the factors the FCC evaluates in deciding whether to grant the application of an incumbent local exchange carrier to enter the long-distance market. Part of the process is directed at ensuring that the applicant is facilitating competition in the market for local services before it is allowed to enter the long-distance market. To that end, under section 271(d)(2)(B), the FCC consults with the state commission to verify that the BOC has (1) one or more state-approved interconnection agreements with a competitor, pursuant to sections 251 and 252, or a Statement of Generally Available Terms and Conditions (SGAT) under which it will offer local service, and (2) that the interconnection agreements or the SGAT satisfies the 14-point competitive checklist set out in section 271(c)(2)(B). The state commission makes a recommendation, which is merely advisory, as to whether the BOC has satisfied the requirements. The Act reserves to the FCC the authority to decide whether to grant a section 271 application. *See MCI Telecomms. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323 (7th Cir. 2000).

In this case, SBC initiated a proceeding before the IURC to have the agency evaluate its compliance with section 271 so that the IURC could then consult with the FCC on SBC's proposed application to provide long-distance service. In evaluating SBC's compliance with section 271, IURC set up a collaborative process to allow for the participation of other interested parties, namely, competing local exchange carriers. Several of the competing carriers presented the IURC with proposed "performance assurance" or "remedy" plans to ensure SBC's performance toward the competing carriers and to provide for enforcement of the plan through liquidated damages payable to the competing carriers and

assessments payable to the state of Indiana. But no agreement on such a plan was reached.

"Performance assurance" plans are not creatures of the Act. However, the FCC has said that the "existence of a satisfactory performance monitoring and enforcement mechanism is probative evidence that the BOC will continue to meet its section 271 obligations after a grant of [long-distance] authority." *In re Joint Application by BellSouth Corp. et al. for Provision of In-Region, InterLATA Servs. in Ga. And La.*, 17 F.C.C.R. 9018, ¶ 291 (May 15, 2002). It is easy to see why SBC might want to present a plan to the FCC to bolster its application. And, in fact, SBC presented a plan of its own in seeking the IURC's favorable recommendation to the FCC. It was a plan SBC had negotiated with Time-Warner Telcom of Indiana as an amendment to its interconnection agreement with that company. It would be a performance assurance plan that, if the IURC approved, would be available to all other competing local exchange carriers pursuant to section 252(I).

It was not approved, however, and instead the IURC entered an order adopting a remedy plan of its own. It asserted that Indiana state law gave it the authority to adopt the plan and to issue orders regarding the quality of service SBC provided. The IURC said that SBC was "subject to the jurisdiction and oversight" of the IURC and is obligated under Indiana law to "furnish adequate service and facilities." The order it entered was a "stand-alone" document, which the IURC said was available to new entrants into the local service market, "independent of the Sections 251/252 interconnection agreement process."

With this state of affairs, SBC moved to federal court with a complaint, alleging that the IURC order conflicted with and was preempted by sections 251, 252, and 271 of the Act and that the order exceed the IURC's authority under Indiana law. SBC filed a motion for a preliminary injunc-

tion, which by agreement was consolidated with a final hearing on the merits of the preemption claims. The parties filed cross-motions for summary judgment, and the district court granted SBC's request for injunctive relief. The IURC and a number of intervener-competing local exchange carriers now appeal that decision.

As a preliminary matter, we note that at first glance it may seem disingenuous for SBC to submit its own performance assurance plan and, when that plan fails to gain approval, to say the IURC has no authority to issue its own plan, a plan to which SBC did not agree. A closer look, however, reveals the logic in SBC's position. The company was seeking approval of its application to provide long-distance service. A performance assurance plan of its own making would be its promise to meet its obligations as to local service if its application to provide long-distance service were granted. If its plan were inadequate, SBC would presumably bear the consequences in the form of the rejection of its application. To have a plan imposed from the outside takes the application process out of SBC's hands and imposes on it unnegotiated obligations in its provision of local service.

We come, then, to the issue: is the IURC order preempted by the Act? Congressional intent " 'is the ultimate touchstone' of pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)). Congress's intent may be explicit or it may be implicit in the statute's structure and purpose. *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992). The Telecommunications Act, as we have said, specifically reserves some power to the states. The issue is how much. What the IURC has done is preempted if Congress has occupied the field so thoroughly "as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone*, 505 U.S. at 516. It is also preempted where what the state has done is an

obstacle to the execution of Congress's purpose or frustrates that purpose by interfering with the methods Congress selected to achieve a federal goal even when the state goal is identical to the federal goal:

> In determining whether state law stands as an obstacle to the full implementation of federal law, it is not enough to say that the ultimate goal of both federal and state law is the same. A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach the goal.

*Gade*, 505 U.S. at 103 (citations omitted); *see also Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000).

It is uncontroverted that in the Act, Congress transferred broad authority from state regulators to federal regulators, even while it left corners in which the states had a role. This role is illustrated by section 271, under which, as we have been discussing, the state commission evaluates an application and makes a recommendation to the FCC. But what the IURC has done is to parlay its limited role in issuing a recommendation under section 271, involving long-distance service, into an opportunity to issue an order, ostensibly under state law, dictating conditions on the provision of local service. The problem is that the procedure for entry into the local-service market is spelled out in some detail in sections 251 and 252. The IURC order bumps up against those procedures and thus interferes with the method the Act sets out for the application process for long-distance service in section 271 and, more dramatically, with the process for interconnection agreements for local service under sections 251 and 252.

In *Wisconsin Bell, Inc. v. Bie*, 340 F.3d 441 (7th Cir. 2003), we recently considered a similar foray by the Wisconsin Public Service Commission into the sections 251-252 process. The commission ordered Wisconsin Bell to file tariffs setting out the price and other terms on which

competitors would be allowed to interconnect with Wisconsin Bell's local telephone network. We found that the requirement was preempted. In fact, we said:

> The tariff procedure short-circuits negotiations, making hash of the statutory requirement that forbids requests for arbitration until 135 days after the local phone company is asked to negotiate an interconnection agreement. 47 U.S.C. § 253(b)(1).

At 445. We recognized that by providing an alternative means of obtaining interconnection, the tariff promoted the "procompetitive policy of the federal act." Nevertheless, we found that to "identify the policy underlying a statute and then run with it is a dangerous method of interpretation . . . ." *Id.*

Although the IURC and the interveners argue that *Bie* does not apply here, we are hard-pressed to see why not. Perhaps they are, too, for their alternative argument is that we should overrule *Bie*. We decline the opportunity, not just because the case is a recent statement from us, but because we think it is rightly decided. The situation currently before us is similar and requires the same result, which we would reach with or without the helpful guidance of *Bie*. What the IURC has done is to make an end run around the Act. By issuing its freestanding order, the IURC set up baselines for interconnection agreements. The order interferes with the procedures set out in the Act, which require that the agreements be negotiated between private parties, and only when that fails are they subject to mediation by state agencies. We find that the order of the IURC is preempted by sections 251 and 252 of the Act. The judgment of the district court is therefore AFFIRMED.

No. 03-1976                                                        9

A true Copy:

    Teste:

                            _____
                            *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*