POSNER, Circuit Judge.
Local telephone companies such as Wisconsin Bell have a degree of monopoly power because of the cost to a competitor of duplicating the grid of telephone wires and switching equipment that constitutes a local telephone network. The competitor will find it difficult to compete unless it is interconnected with the local network. The Telecommunications Act of 1996 provides a machinery for encouraging interconnection. The competitor can require the local phone company to negotiate, in good faith, an agreement authorizing interconnection on mutually agreeable terms. If negotiations fail, the competitor can seek arbitration by the state regulatory commission, and the commission’s arbitral decision can be challenged in federal district court on the ground that the decision fails to comply with 47 U.S.C. §§ 251 or 252, sections that establish pricing and other standards for interconnection. See Verizon Communications, Inc. v. FCC, 535 U.S. 467, 492-97, 122 S.Ct. 1646, 152 L.Ed.2d 701 (2002). But the commission’s decision cannot be challenged in state court. 47 U.S.C. §§ 252(e)(4), (6).
The question presented by this appeal is whether a state may create an alternative method by which a competitor can obtain interconnection rights. Wisconsin’s public utility commission simply ordered Wisconsin Bell to file tariffs setting forth the price and other terms on which competitors such as WorldCom shall be entitled to interconnect with Wisconsin Bell’s local telephone network, rather than arbitrating a disagreement between WorldCom and its competitors concerning the terms on which those competitors could interconnect with Wisconsin Bell’s local network. Wisconsin Bell challenged the order in federal district court. The judge held that the order is barred by the federal act, and these *443 appeals (by the commission itself, and by WorldCom) followed.
Whether as the district judge ruled the state’s tariff-filing order is preempted by the provisions of the federal act creating the contractual route to interconnection depends on whether the state requirement interferes with the federal procedure. The Federal Telecommunications Act is explicit that a state commission’s regulations concerning interconnection are not preempted “if such regulations are not inconsistent with the provisions of [the Federal Telecommunications Act].” 47 U.S.C. § 261(b); Verizon North, Inc. v. Strand, 309 F.3d 935, 937-44 (6th Cir.2002). But if they are inconsistent, they are preempted. A conflict between state and federal law, even if it is not over goals but merely over methods of achieving a common goal, is a clear case for invoking the federal Constitution’s supremacy clause to resolve the conflict in favor of federal law, see, e.g., Gade v. National Solid Wastes Management Ass’n, 505 U.S. 88, 103-04 and n. 2, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) — and so WorldCom acknowledges in its reply brief.
There is an initial question, however, whether the state’s tariff order has any practical significance. Wisconsin disclaims authority to fix the rates in the tariffs that it has ordered Wisconsin Bell to file. If taken literally, the disclaimer implies that if Wisconsin Bell wants to prevent World-Com or other would-be competitors from bypassing the contractual route, and thus to thwart utterly the state commission’s alternative procedure, it has only to specify a ridiculously high price in the tariffs that it files. But against this the Wisconsin commission, while disclaiming authority to fix the rates in Wisconsin Bell’s interconnection tariffs, asserts a right to insist that the rates be “reasonable.” “[T]he commission may not, and is not, specifying the tariff rates, terms, and conditions .... However, compliance with this order for tariffing does require good faith on the part of Ameritech; it cannot post a price, or impose terms and conditions, so totally unreasonable as to amount to a de facto avoidance of compliance. An unreasonable price, term, or condition is one that is patently obvious to any reasonably well-informed buyer as intended to discourage or prevent the purchase of the service. Having said that, however, the Commission recognizes that,- in any challenge to a price, term or condition, the proponent would have a heavy burden to prove Amer-itech’s noncompliance with this order.” Final Decision, Investigation into Ameri-tech Wisconsin Operational Support Systems, Docket No. 6720-TI-160, at 20, available at http:// psc.wi.gov/pdfflles/ord_notc/3823.pdf (Public Service Commission of Wisconsin Sept. 25, 2001).
In the usual type of common carrier or public utility regulation, the reasonableness of a rate is determined by reference to the cost of the tariffed service; the carrier or utility is constrained to fix a rate no higher than necessary to cover the cost of the service. The passage we just quoted from the Commission’s decision suggests that only an outlandish discrepancy between the tariffed rate and the cost of service will trigger a finding of unreasonableness. This implies that Wisconsin Bell’s pricing freedom is constrained only to the extent that it may not fix a rate that exceeds the upper end of the range of prices likely to emerge from a negotiation with a would-be competitor in accordance with the procedures set forth in the federal act. The tariffing requirement would still be pretty empty because the would-be competitor would expect to be able to do better in a negotiation subject-to arbitration than merely to bow to the telephone company’s opening bid. ■
*444 We were led by these ruminations to direct the parties to file supplemental briefs explaining just what is at stake in this case. We learn from these briefs that while indeed disclaiming power to fix Wisconsin Bell’s rates, the Wisconsin commission has ruled that the rates in the tariffs that it has required Wisconsin Bell to file must be based on the cost of the tariffed services as determined in accordance with cost-accounting procedures prescribed by the commission; specifically, the rates must be based on “the sum of the Total Element Long Run Incremental Cost (TELRIC) and a reasonable allocation of forward-looking joint and common costs.” Final Decision, Investigation into Ameri-tech Wisconsin’s Unbundled Network Elements, Docket No. 6720-TI-161, at 22-23, available at http:// psc.wi.gov/pdffiles/ord_notc/4534.PDF (Public Service Commission of Wisconsin Mar. 22, 2002). Rates so determined will prevent Wisconsin Bell from setting a “take it or leave it” rate that might deter all prospective entrants from taking the tariff route. “As explained in the Final Decision, this order does not establish [the tariff rates] themselves, but determines the details of a methodology that can be used to determine cost-based [tariffs] as required. For example, the Commission made the determinations in its Final Decision for the appropriate cost of capital, depreciation rates, level of spare capacity (fill), contract prices and joint and common markup to comply with forward-looking TELRIC pricing standards to name a few such details.” UNE Compliance Order, Investigation into Ameritech Wisconsin’s Unbundled Network Elements, Docket No. 6720-TI-161, at 61, available at http:// psc.wi.gov/pdfffles/ord_notc/6145.PDF (Public Service Commission of Wisconsin July 9, 2003). These decisions make clear that it is the commission, not Wisconsin Bell, that is making the tariff in a realistic sense. The statement by our dissenting colleague that the decisions from which we have quoted do not concern the tariffs that the Commission has ordered Wisconsin Bell to file is incorrect. The decisions expressly direct Wisconsin Bell to file conforming tariffs on unbundled network elements (UNE), March 22 order, supra, at 2, which are a component of operational support systems (OSS), the general term for the provision of access by a local phone company to a new entrant. Sept. 25 order, supra, at 1 n. 1.
The district court was right to hold that the state’s tariffing requirement is preempted. See Verizon North, Inc. v. Strand, supra, 309 F.3d at 941; MCI Telecommunications Corp. v. GTE Northwest, Inc., 41 F.Supp.2d 1157, 1178 (D.Or.1999); but cf. Michigan Bell Tel. Co. v. MCIMetro Access Transmission Services, Inc., 323 F.3d 348, 358-60 (6th Cir.2003). The requirement has to interfere with the procedures established by the federal act. It places a thumb on the negotiating scales by requiring one of the parties to the negotiation, the local phone company, but not the other, the would-be entrant, to state its reservation price, so that bargaining begins from there. And it allows the other party to challenge the reservation price, and try to get it lowered, by challenging the tariff before the state regulatory commission, with further appeal possible to a state court — even though Congress, in setting up the negotiation procedure, explicitly excluded the state courts from getting involved in it. At the very least, the tariff requirement complicates the contractual route by authorizing a parallel proceeding.
It is true that the arbitral procedure prescribed by the federal act is not completely freewheeling. The state commission is required, in the event the parties cannot come to an agreement, to establish *445 terms of interconnection based on the same TELRIC pricing standard that the commission would apply to a tariff challenge. Verizon Communications, Inc. v. FCC, supra, 535 U.S. at 493-97, 122 S.Ct. 1646. But it does not follow that the tariff route and the negotiation route are the same or have the same effects. An appeal from the commission’s resolution of an entrant’s challenge to a tariff would go to a state court, rather than a federal court, a difference that cannot be assumed to be inconsequential. And given the vagaries of the regulatory process, which requires such stabs in the dark as making “reasonable projections” of the use that a prospective entrant will make of access to the local network if interconnection is ordered, id. at 496 n. 16, 122 S.Ct. 1646, and the fact, as the Court noted in that case, that in setting rates the state commissions are subject to an “important limitation previously unknown to utility regulation,” id. at 493, 122 S.Ct. 1646, the results of a negotiation between the local phone company and a prospective entrant are not preordained — if it were, the federal law would not have made recourse to the commission a last resort if negotiations fail. The tariff procedure short-circuits negotiations, making hash of the statutory requirement that forbids requests for arbitration until 135 days after the local phone company is asked to negotiate an interconnection agreement. 47 U.S.C. § 253(b)(1).
The commission and WorldCom argue that by providing an alternative means of obtaining interconnection, the state’s tariff requirement promotes the procompetitive policy of the federal act. But to identify the policy underlying a statute and then run with it is a dangerous method of interpretation; it is likely to run roughshod over the compromise between interest groups that enabled the statute to be passed in the first place. Rodriguez v. United States, 480 U.S. 522, 525-26, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (per curiam); Hrubec v. National Railroad Passenger Corp., 49 F.3d 1269, 1270 (7th Cir.1995); Bethlehem Steel Corp. v. ERA, 723 F.2d 1303, 1309 (7th Cir.1983); Philip P. Frickey, “From the Big Sleep to the Big Heat: The Revival of Theory in Statutory Interpretation,” 77 Minn. L, Rev. 241, 251 (1992). The negotiation procedure established by the federal act provides the local phone company with a degree of protection that it would lack if the state commission could, by requiring the company to file a tariff that the commission might invalidate as unreasonable, enable would-be entrants to bypass the federally ordained procedure.
AFFIRMED.