*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

QUICK COMMUNICATIONS, INC., dba Quick Connect
USA,

*Plaintiff-Appellant*,

*v.*

MICHIGAN BELL TELEPHONE COMPANY; J. PETER
LARK, Chairman; ROBERT B. NELSON,
Commissioner; LAURA CHAPPELLE, Commissioner,
in their official capacities as Commissioners of the
Michigan Public Service Commission,

*Defendants-Appellees*.

No. 06-2103

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-72396—Marianne O. Battani, District Judge.

Argued: September 14, 2007

Decided and Filed: February 13, 2008

Before: MARTIN, GUY, and CLAY, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Norman C. Witte, WHITE LAW OFFICES, Lansing, Michigan, for Appellant. William
J. Champion, III, DICKINSON WRIGHT, Ann Arbor, Michigan, Michael A. Nickerson, OFFICE
OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Norman C.
Witte, WHITE LAW OFFICES, Lansing, Michigan, Gary L. Field, LAW OFFICE OF GARY L.
FIELD, Lansing, Michigan, for Appellant. William J. Champion, III, DICKINSON WRIGHT, Ann
Arbor, Michigan, Jeffery V. Stuckey, DICKINSON WRIGHT, Lansing, Michigan, Michael A.
Nickerson, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, Craig A. Anderson,
MICHIGAN BELL TELEPHONE COMPANY, Detroit, Michigan, Lisa M. Bruno, Detroit,
Michigan, for Appellees.

1

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge. The Michigan Public Services Commission ordered Quick Communications Incorporated and Michigan Bell Telephone Company (d/b/a AT&T) to amend their interconnection agreement to conform with the Commission's most recently approved service rates. Quick brought suit seeking declaratory and injunctive relief, arguing that the Telecommunications Act of 1996, the terms of the interconnection agreement, the *Sierra-Mobile* doctrine, and the Contract Clause of the United States Constitution prohibited the Commission's action. The district court granted defendants' motion for summary judgment on all of Quick's claims. Quick now appeals.

I.

The Federal Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* (1996), was intended to deregulate the telecommunications industry and spur competition. Under the Act, there are two types of service providers relevant to this action: (1) Incumbent Local Exchange Carriers ("ILECs"), and (2) Competitive Local Exchange Carriers ("CLECs"). ILECs are entities such as the defendant, AT&T, that held a monopoly on local telephone service. ILECs control the last mile through which every CLEC must access its customers. The Act mandates that ILECs provide access to its network to competitors (CLECs) through interconnection agreements. The ILECs are allowed to charge reasonable and nondiscriminatory rates for this access. 47 U.S.C. § 252(d). Those rates are established by state public utilities commissions — here, the Michigan Public Service Commission — through a cost methodology known as the Total Service Long Run Incremental Cost ("TELRIC").

In order for the Commission to establish proper TELRIC rates, they require AT&T to conduct cost studies, 47 U.S.C. § 252(c)(2), which the Commission must approve. On August 30, 2002, AT&T filed an application with the Commission seeking a determination of its costs to provide services. AT&T's application claimed that its then-current costs were significantly higher than those previously set by the Commission, and it sought a new determination.

On September 16, 2002, the Commission dismissed AT&T's application and ordered AT&T to submit a new application with revised cost studies. Accordingly, on May 2, 2003, AT&T submitted its new application with a revised cost study. The Commission issued a notice directing any interested parties that wished to participate in the proceedings to file a "notice of intent to participate." Quick never filed a notice.

On September 21, 2004, after a year and a half of extensive proceedings including expert testimony, exhibits, public comments and briefs, the Commission issued an order approving, subject to certain modifications, AT&T's cost studies. On November 5, 2004, AT&T filed its proposed pricing schedule in compliance with the Commission's September 21 Order. Quick, along with other CLECs had 45 days to submit comments, and AT&T had 21 days to respond to those comments. On December 20, 2004, Quick filed objections to the Commission's order requiring the new pricing schedule be incorporated into existing interconnection agreements. Quick argued that incorporation of the new approved rates in its existing interconnection agreement required further negotiation. On January 25, 2005, the Commission rejected Quick's and the other CLECs' objections, stating the because it had "substantially revised the costs proposed by AT&T . . . there [was] no basis for further dispute resolution, negotiation, or delay." The January 25 Order also required AT&T to "true-up" all charges billed under its interconnection agreements retroactive to

November 6, 2004, the effective date of the new approved rates. On February 25, 2005, Quick and other CLECs petitioned for a rehearing, and on May 17, 2005, the Commission denied the petition.

II.

On June 25, 2005, after the Commission denied its petition for rehearing, Quick filed suit seeking declaratory and injunctive relief to prevent the pricing amendment to its interconnection agreement with AT&T from going into effect. Quick claimed the January 25, 2005 order violated its interconnection agreement with AT&T, the federal Telecommunications Act, the *Sierra-Mobile* doctrine, and the Contract Clause of the United States Constitution.

On July 19, 2006, the district court granted summary judgment in favor of AT&T and the Commission on all of Quick's claims. The district court held that (1) Quick had failed to show that the implementation ordered by the Commission was barred by the Telecommunications Act; (2) the Commission's order did not violate the terms of the interconnection agreement; (3) the *Sierra-Mobile* doctrine was not implicated; and (4) the Contract Clause was not violated.

Quick appeals the district court's grant of summary judgment.

III.

We must decide whether the Commission's order to amend the Quick/AT&T interconnection agreement violated not only the agreement, but the Federal Telecommunications Act, the *Sierra-Mobile* doctrine, and the Contract Clause of the United States Constitution. The applicable standard of review is more complex than the simple *de novo* standard that typically governs our review of summary judgment. When a district court's decision on summary judgment is the result of a review of a state administrative body's ruling, *de novo* review requires that the proper standard of review of the underlying state administrative ruling be applied. *Mich. Bell Tel. Co. v. MFS Intelenet of Mich., Inc.*, 339 F.3d 428, 433 (6th Cir. 2003).

AT&T argues that we should apply the *de novo* standard to our review of whether the Commission's actions complied with the Telecommunications Act, but must apply the more deferential "arbitrary-and-capricious" standard to our review of the Commission's analysis of the interconnection agreement. This is incorrect. Because the Telecommunications Act governs the Commission's interpretation of the interconnection agreement, *de novo* review applies to the question of whether the Commission's order violated the Telecommunications Act, and the arbitrary and capricious standard applies to the Commission's determinations of fact and state law. *Id.*

**1.    Does the Telecommunications Act allow the Commission to override terms of interconnection agreements when implementing new rate changes?**

In its summary judgment order, the district court laid out the following background:

> The Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 252(d), is designed to promote competition in the previously monopoly-driven local telephone service market. *See Verizon Comm., Inc. v. FCC*, 535 U.S. 467, 475-76 (2002). To achieve its goal the Act requires the incumbent local telephone service provider, AT&T Michigan in this case, to allow new market entrants to interconnect with and access the incumbent's network for a fair price. 47 U.S.C. § 251(c). Specifically, incumbent local exchange carriers must allow competing carriers to use their networks, a practice known as "unbundling." *See* 47 U.S.C. § 251(c)(3).

Sections 251 and 252 of the Act create a process for creating and modifying the contracts of "interconnection agreements" that govern the relationship of ILECs and CLECs. *See Ill. Bell Tel. Co. v. Worldcom Techs., Inc.*, 179 F.3d 566 (7th Cir. 1999) (describing the procedure by which interconnection agreements are reached). The interconnection agreement lays out in specific detail what access to network elements the new entrant wishes to purchase from the incumbent, the price to be paid, and other parameters of their relationship. The interconnection agreements are then subject to "state commission approval, FCC oversight, and federal judicial review." *Verizon North, Inc. v. Strand*, 309 F.3d 935, 941 (6th Cir. 2002) ("*Verizon I*"). The duty of the state commissions is to uphold the Act and the FCC regulations promulgated under it. To achieve that end, the commissions ensure that the interconnection agreements work to foster competition and benefit the public, without discriminating against others seeking to enter the market. *See* 47 U.S.C. § 252(c)(1).

JA 192-93.

Quick does not dispute that the Commission has the power to set TELRIC-based rates and to require parties to amend their interconnection agreements to incorporate the new prices. Quick argues that federal law does not give the Commission the authority to override the interconnection agreements when implementing the new rates.

Our decision in *Verizon North Inc. v. Strand*, 367 F.3d 577, 585-86 (6th Cir. 2004) ("*Verizon II*"), illuminates the primacy that interconnection agreements are given under the Act. In *Verizon II*, the Commission ordered an ILEC to publish its wholesale prices for services, so that any party could choose to purchase a service without entering into an interconnection agreement with the ILEC. *Id.* at 583-84. This Court reversed the Commission, and held that such an order eviscerates any incentive to engage in private negotiation, which is the centerpiece of the Act. *Id.* By sidestepping Congress's chosen mechanism for increasing competition in the local telecommunications market — the private and voluntary mutual negotiation of interconnection agreements — the Commission upset the intricate balance between competitors and incumbents. *Id.* at 586. Ultimately, *Verizon II* teaches that a Commission may not constructively "[permit] the institution of an interconnection agreement by fiat." *Id.* at 585.

However, the over-arching purpose of the Telecommunications Act is to end local telephone company monopolies and promote competition in local telephone markets. *Mich. Bell Tele. Co. v. MCIMetro Access Transmission Serv.*, 323 F.3d 348, 351-52 (6th Cir. 2003). In *Michigan Bell Telephone*, there was an interconnection agreement between the ILEC and the CLEC. The CLEC began purchasing services pursuant to terms the ILEC had published in its state-law-mandated tariff instead of pursuant to the terms of the interconnection agreement. This Court upheld the Commission's determination that the CLEC may purchase services pursuant to the tariffs instead of pursuant to the terms of the interconnection agreement. This Court reasoned that because the state-law imposed tariff requirement pre-dated the interconnection agreement, and because purchasing services pursuant to the tariff bolstered the Act's purpose of increasing competition, the Commission's determination was not in error. *Id.*

Taking these governing, and sometimes conflicting, principles into account, we believe that while the terms of the interconnection agreement may govern the parties' relationship, "[t]he Commission can enforce state law regulations, even where those regulations differ from the terms of the Act or an interconnection agreement, as long as the regulations do not interfere with the ability of new entrants to obtain services," or reduce or cut-off competition. *Id.* at 359.

A review of the Commission's January 25 Order reveals that after a two-year proceeding, the Commission approved cost-based rates in its September 21, 2004 Order. Between September 21, 2004 and January 25, 2005, Quick and other CLECs filed multiple objections to the September Order establishing new rates. This long process resulted in the January 25 Order requiring the implementation of the new Commission-approved rates. The Order specifically rejected Quick and the other CLECs' argument that the Commission's finding of new TELRIC rates requires each CLEC to renegotiate its interconnection agreement with AT&T pursuant to the terms of those agreements. As the district court correctly found, this was well within the Commission's authority:

> Neither the Act nor case law interpreting the Act precludes the Commissioner's conduct. . . . The FCC has ruled that states may set TELRIC-based prices in a consolidated proceeding, then replace the rates set in prior arbitrations, and apply the results of the consolidated proceeding in subsequent arbitrations . . . . The Act itself contains no language mandating a particular implementation procedure for rate revision. Nor does the Act contain any restraint on a state commission's authority to require parties to amend their interconnection agreement to incorporate new or revised pricing information.

JA 193-94.

We agree with the district court. The Commission's order enforced state and federal law requiring TELRIC-compliant rates be used, and did not interfere with the ability of new market entrants to obtain services, nor did it impair competition. Thus, under *Michigan Bell Telephone*, we find that the Commission was within its authority to order immediate amendments to the interconnection agreement regarding the new rates. Because we find that the Commission acted within its authority when it required immediate amendments to the interconnection agreement, it is not necessary for us to determine if the interconnection agreement was violated by the Commission's January 25 order. Instead we turn to the other two questions presented.

## 2.     Did the Commission's order violate the *Sierra-Mobile* doctrine?

Quick argues that the Commission's order violated the *Sierra-Mobile* doctrine established in *United Gas Pipe line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332 (1956), and *Federal Power Commission v. Sierra Pacific Power Co.*, 350 U.S. 348 (1956). The *Sierra-Mobile* doctrine prohibits an agency from allowing regulatees to unilaterally abrogate their private contract by altering their terms. The district court, relying on *Bellsouth Telecomm., Inc. v. Miss. Pub. Serv. Comm'n*, 368 F. Supp.2d 557, 565 n.9 (S.D. Miss. 2005), held that interconnection agreements under the Telecommunications Act are atypical contracts which are the result of state and federal regulations, and thus the *Sierra-Mobile* doctrine is not applicable. We agree. In this case, AT&T did not unilaterally do anything, let alone unilaterally abrogate the interconnection agreement with Quick. Rather, the Commission ordered Quick and AT&T to amend their interconnection agreement pricing index to conform to the January 25 Order. Such action on the part of the Commission is not in violation of the *Sierra-Mobile* doctrine.

## 3.     Did the Commission's order violate the Contract Clause of the Constitution?

Article 1, § 10, of the United States Constitution provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." Quick must "demonstrate that a 'change in state law has operated as a substantial impairment of a contractual relationship.'" *Mascio v. Pub. Employees Ret. Sys. of Ohio*, 160 F.3d 310, 313 (6th Cir. 1998) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181 186 (1992)). The district court held that Quick had failed to advance any argument that the impairment was substantial.

We agree with the district court that the Contract Clause was not implicated by the Commission's January 25 Order. Interconnection agreements are quasi-governmental agreements used to accomplish the goal of the Telecommunications Act by fostering competition in local telecommunications markets. As we held earlier, the Commission has the authority under the Act to approve rates and terms of interconnection agreements in order to advance the goal of greater competition. By law, Quick was required to abide by the new TELRIC rates as determined by the Commission. Requiring Quick and AT&T to implement those new rates immediately rather than allowing both parties to negotiate how to implement the new rates was not a change in state law that operated as a substantial impairment to AT&T and Quick's contractual relationship, rather, the Commission's order merely enforced existing state and federal law. Accordingly, we AFFIRM the district court's decision that the Commission's January 25 Order did not violate the Contracts Clause.

## IV.

The MPSC had the authority to implement new TELRIC rates. Requiring Quick and AT&T to amend their interconnection agreement to conform to those new rates was within the Commission's authority and was not a violation of the Federal Telecommunications Act, the *Sierra-Mobile* doctrine, or the Contracts Clause of the Constitution. Accordingly, we AFFIRM the district court's grant of summary judgment in favor of AT&T.