# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 7, 2008        Decided October 31, 2008

No. 07-1381

CORE COMMUNICATIONS, INC.,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

VERIZON, ET AL.,
INTERVENORS

———

On Petition for Review of an Order
of the Federal Communications Commission

———

*Michael B. Hazzard* argued the cause for petitioner. With him on the briefs was *Stephanie A. Joyce*.

*Nandan M. Joshi*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *Thomas O. Barnett*, Assistant Attorney General, *Robert B. Nicholson* and *Robert J. Wiggers*, Attorneys, *Matthew B. Berry*, General Counsel, Federal Communications Commission, *Joseph R. Palmore*, Deputy General Counsel,

*Richard K. Welch*, Acting Deputy Associate General Counsel, and *Laurence N. Bourne*, Counsel.

*Bruce A. Olcott* and *Herbert E. Marks* were on the brief for intervenor State of Hawaii.

*Gregory J. Vogt*, *Richard A. Askoff*, *Scott H. Angstreich*, *Derek T. Ho*, *Michael E. Glover*, *Karen Zacharia*, *Daniel Mitchell*, *Karlen J. Reed*, *Thomas J. Moorman*, *Joshua Seidemann*, *Gary L. Phillips*, and *Gerald J. Duffy* were on the joint brief for intervenors in support of respondents. *Judith L. Harris* and *Robert H. Jackson* entered appearances.

Before: ROGERS and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Core Communications, a competitive local exchange carrier ("LEC"), petitioned the Federal Communications Commission for "forbearance" under § 10(c) of the Telecommunications Act of 1996, 47 U.S.C. § 160(c). Specifically it asked the Commission to forbear from "rate regulation preserved by" § 251(g), from "rate averaging and rate integration required by" § 254(g), and, in each case, from "related implementing rules." *In re Petition of Core Communications, Inc. for Forbearance from Sections 251(g) and 254(g) of the Communications Act and Implementing Rules*, 22 FCC Rcd 14,118 at 14,118 (2007) ("*Order*"). The FCC denied the petition in full. *Id.* Core now seeks review of the *Order*.

We have no occasion to get into the merits; Core has not shown a basis for Article III standing. Specifically Core has failed to make clear how the requirements it mentions under those statutory provisions, or their "related implementing

rules," cause Core any harm. Accordingly, we dismiss Core's petition.

* * *

Because the parties in agency cases on direct review will have had no prior occasion to dispute Article III standing, we have insisted—to avoid having either to decide standing on an incomplete record or to order additional submissions—that the petitioner should, except where standing is self-evident, "establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto *at the first appropriate point* in the review proceedings." *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002) (emphasis added). In the absence of a prior motion to dismiss for want of standing, "the first appropriate point" is "the petitioner's opening brief—and not . . . [the] reply to the brief of the respondent agency." *Id*. As we explained, "experience teaches that full development of the arguments for and against standing requires the same tried and true adversarial procedure we use for the presentation of arguments on the merits." *Id*.

Our circuit's rules restate the requirement:

In cases involving direct review in this court of administrative actions, the brief of the appellant or petitioner must set forth the basis for the claim of standing. . . . When the appellant's or petitioner's standing is not apparent from the administrative record, the brief must include arguments and evidence establishing the claim of standing.

Circuit Rule 28(a)(7) (citing *Sierra Club*, 292 F.3d at 900–01). What's more, in an order setting forth the briefing schedule, we specifically reminded Core of its obligation to

comply with *Sierra Club* and Circuit Rule 28(a)(7). *Core Communications, Inc. v. FCC*, No. 07-1381 (D.C. Cir. Feb. 28, 2008).

Core did allude to the standing problem in its opening brief, but it offered only a pair of conclusory assertions—that Core is subject to (1) "disparate intercarrier competition [compensation?] regimes preserved by 251(g)" and (2) "ongoing application of section 254(g)'s rate averaging and integration rules, which preclude Core from utilizing differentiated pricing for long distance services and further chills Core's entry into rural market areas where incumbents receive implicit subsidies through this provision." Core Br. 18.

Core failed to explain *how* it was being injured by the application of §§ 251(g) and 254(g). It did not reveal what services it offered or planned to offer that are or would be affected by these statutory provisions. Nor, to the extent that the services might be in markets that Core might *enter*, did Core say anything to indicate the seriousness of its plans, which might range from a gleam in management's eye to a well-developed business plan. As a result, the FCC in its response brief was "left to flail at the unknown in an attempt to prove the negative." *Sierra Club*, 292 F.3d at 901.

Conceivably Core's reply brief (or even the FCC's response, or the combination), might have shown that in fact standing was "self-evident," *id*. at 900, or "apparent from the administrative record," Circuit Rule 28(a)(7). They did not; but they did disclose an *invalid* theory that seems to lie at the heart of Core's idea of its injury.

The FCC observed in its brief that to the extent "information can be gleaned from other litigation before this Court and public sources . . . Core is a competitive LEC

engaged in delivering large quantities of incumbent LEC-originated Internet-bound dial-up traffic to Internet service providers." FCC Br. 21. Core responded in its reply brief and at oral argument that the Core traffic that the FCC described would indeed benefit from the forbearance sought in its petition.

Here's the attempted logical chain: The Commission, finding in 2001 that the then-existing "reciprocal compensation obligations of section 251(b)(5)" gave competitive LECs such as Core "opportunities for regulatory arbitrage," issued an order removing ISP-bound traffic from those obligations. *In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996: Intercarrier Compensation for ISP-Bound Traffic*, 16 FCC Rcd 9151, 9153–54, ¶¶ 2–3 (2001) ("*ISP Remand Order*"). In place of the § 251(b)(5) regime, the *ISP Remand Order* imposed both a "bill-and-keep" system, under which each carrier recovers its costs from its own end-users, and a set of interim cost-recovery rules to aid in the transition to that regime. *See WorldCom, Inc. v. FCC*, 288 F.3d 429, 431 (D.C. Cir. 2002). In adopting the order, the Commission relied solely on § 251(g). *Id*. at 430.

Had matters stopped there, Core's standing would be clear. Forbearance from enforcement of rate regulation under § 251(g) and "related implementing rules" would remove the force of the *ISP Remand Order*, which had been adopted under § 251(g) precisely to thwart the "regulatory arbitrage" employed by firms like Core.

But matters did not stop there. An array of firms, including Core, challenged the *ISP Remand Order* in this court, which held unequivocally that § 251(g) did *not* provide a legal basis for the order. *Id*. at 433-34. We nonetheless did not vacate the *ISP Remand Order*. Not only did many of the

order's challengers themselves favor a bill-and-keep regime, but there was "a non-trivial likelihood that the Commission ha[d] authority to elect such a system (perhaps under §§ 251(b)(5) and 252(d)(B)(i))." *Id*. at 434. Accordingly, we simply remanded the matter to the Commission; the *ISP Remand Order* thus entered a kind of regulatory limbo, from which it has yet to emerge. (We note, however, that we recently directed the Commission to explain by November 5, 2008 "the legal authority for the [*ISP Remand Order*]." *In re Core Communications, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008).)

But the passage of time, of course, has not miraculously pulled the *ISP Remand Order* back under § 251(g). Accordingly, removal of rate regulation under § 251(g) and "related implementing rules" would have no effect on Core.

There remains the possible link between Core's business or future business and rate averaging and integration under § 254(g). On this issue Core has pointed us to its website, www.coretel.net, which it says provides links to its "tariffed local exchange, exchange access, and long distance (*i.e.*, 'IXC') offerings." Reply Br. 3. While the webpage does indeed link to an interstate access tariff, there is no indication that Core provides any service thereunder. At no point— much less in the opening brief, as required for any element of standing that is not self-evident—does Core show how its position, with respect to some specific service, would be improved by grant of its petition for forbearance from regulation under § 254(g).

\* \* \*

Core's petition for review is

*Dismissed.*