# United States Court of Appeals

### For the Eighth Circuit

_____

No. 11-3507

_____

Carmen Lavaugh Earnheart

*Plaintiff - Appellant*

v.

Michael J. Astrue, Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: July 27, 2012
Filed: August 7, 2012
[Unpublished]

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Carmen Lavaugh Earnheart appeals the district court's[1] order affirming the denial of disability insurance benefits and supplemental security income. After a hearing, an administrative law judge (ALJ) determined that (1) Earnheart's bipolar and general anxiety disorders, cocaine dependence in early remission, and borderline intellectual functioning were severe impairments, but alone or combined, did not meet or medically equal the requirements of a listing; (2) her subjective complaints were not entirely credible; and (3) while Earnheart's residual functional capacity (RFC) precluded her past relevant work, based on a vocational expert's response to a hypothetical, she could perform certain other jobs. The Appeals Council denied review, and the district court affirmed. This court reviews de novo the district court's determination whether substantial evidence on the record as a whole supports the ALJ's decision. See Phillips v. Astrue, 671 F.3d 699, 701-02 (8th Cir. 2012).

We reject Earnheart's challenges to the ALJ's credibility findings. The record, including Earnheart's testimony, reflects that there are reasons other than her mental impairments for her ongoing failure to comply with the prescribed course of treatment. See Wildman v. Astrue, 596 F.3d 959, 968-69 (8th Cir. 2010) (claimant properly discredited in part based on noncompliance with doctor's instructions); cf. Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009) (courts have recognized that mentally ill claimant's noncompliance can be result of mental impairment). Further, contrary to Earnheart's assertion, the ALJ did not rely solely on reports of Earnheart's Bible reading to discount her alleged inability to focus and concentrate, as test results were also inconsistent with those allegations, see Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (subjective complaints may be discounted based on inconsistencies in record as whole); and any slight overstatement by the ALJ of Earnheart's daily activities is not a basis for reversal, see Mouser v. Astrue, 545 F.3d

---

[1]The Honorable H. David Young, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

634, 638 (8th Cir. 2008) (based on record as whole, credibility assessment was proper; ALJ may have overstated extent of daily activities, but record indicated claimant was generally able to care for himself). In sum, because the ALJ gave several valid reasons for discrediting Earnheart's subjective complaints, we defer to his credibility findings. See Finch v. Astrue, 547 F.3d 933, 935-36 (8th Cir. 2008).

We also reject Earnheart's challenges to the ALJ's RFC determination. In determining RFC, the ALJ essentially adopted the determinations of reviewing medical consultants, noting that he was not bound by them. Earnheart contends that the ALJ ignored treating physician's opinions, but significantly, she does not identify which physician's opinion was ignored or specify any finding by a physician that would call for a different RFC determination, see Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (claimant bears burden of demonstrating her RFC); and the record belies her contention that the medical consultants failed to review her records. As to Earnheart's reliance on her low global assessment of functioning (GAF) scores, the ALJ linked these scores to Earnheart's noncompliance with the prescribed course of treatment, and in any event, this court has held that a GAF score is not essential to the accuracy of an RFC determination, only that it may be of considerable help in formulating RFC, see Halverson, 600 F.3d at 930-31.

As to the final issue, we find that the ALJ's opinion indicates he considered the evidence of Earnheart's substance abuse according to regulatory requirements. See Brueggemann v. Barnhart, 348 F.3d 689, 694-95 (8th Cir. 2003) (if gross total of claimant's limitations, including effects of substance-abuse disorders, shows disability, then ALJ must next consider which limitations would remain when effects of substance abuse are absent). The district court is affirmed.

BYE, Circuit Judge, dissenting.

I disagree with the majority's conclusion regarding Earnheart's challenges to the ALJ's credibility findings. At the outset, I believe the ALJ failed to consider whether Earnheart's noncompliance with her prescribed course of treatment was a result of her mental illness. "Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized psychological and emotional difficulties may deprive a claimant of the rationality to decide whether to continue treatment or medication." Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009) (internal quotation marks and citation omitted). While there are some differences between this case and Pate-Fires, ultimately I believe this case is more like Pate-Fires than Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). Notably, Earnheart was twice diagnosed with bipolar disorder I, and her treatment records reflect erratic behavior, hallucinations, hospitalizations for suicidal ideation, and assessment of poor insight, judgment, and impulse control. Accordingly, like Pate-Fires, I would conclude the ALJ's failure to consider whether Earnheart's mental problems caused her noncompliance warrants reversal.

I am also troubled by the ALJ's consideration of Earnheart's daily activities as a basis for finding her not entirely credible. The ALJ summarized these activities as caring for her personal needs, preparing meals, cleaning, doing laundry, ironing, mowing with encouragement, driving, occasional grocery shopping, paying bills, visiting family, and going out to eat. The ALJ appeared to place particular significance on the written report of Earnheart's mother indicating Earnheart read the Bible, which the ALJ suggested conflicted with Earnheart's testimony about poor concentration and ability to focus.

The ALJ's finding appears to significantly overstate Earnheart's daily activities and her ensuing ability to perform work on a daily basis. For instance, Earnheart's mother did not indicate how long or often Earnheart read the Bible, and she noted

Earnheart only engaged in reading when on medication. As for her meal preparation, Earnheart prepared meals only monthly, and did not cook often or eat much. "We have long stated that to determine whether a claimant has the residual functional capacity necessary to be able to work we look to whether she has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Forehand v. Barnhart, 364 F.3d 984, 988 (8th Cir. 2004) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc)). "Moreover, it is well-settled law that a claimant need not prove [he] is bedridden or completely helpless to be found disabled." Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks and citation omitted).

In sum, I believe the ALJ's credibility determination is not entitled to deference, and thus his RFC determination is not supported by substantial evidence. I therefore respectfully dissent from the majority's decision to affirm.

_____